## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALYSSA NOBRIGA, EVA PEPAJ, JESSICA HINTON, IRINA VORONINA, MONICA LEIGH, and URSULA MAYES, as assignees of MR. HAPPY, INC.,

                 *Plaintiffs*,

      - against -

CLEAR BLUE SPECIALTY INSURANCE COMPANY,

                 *Defendant*.

Case No. 3:24-cv-01980-SVN

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
### DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs Alyssa Nobriga, Eva Pepaj, Jessica Hinton, Irina Voronina, Monica Leigh, and Ursula Mayes, as assignees of Mr. Happy, Inc. (collectively, "Plaintiffs"), submit this memorandum of law in opposition to the motion of defendant Clear Blue Specialty Insurance Company ("Clear Blue" or "Defendant") for judgment on pleadings, ECF No. 39 ("Motion" or "Mov. Br."), and state as follows:

### STATEMENT OF RELEVANT FACTS

The facts of this case are uncontested: Plaintiffs are six (6) professional models who in 2019 initiated an underlying lawsuit in this Court against Mr. Happy, Inc. ("MHI"), *Nobriga, et al. v. Mr. Happy's Inc.*, Case No. 19-cv-868 (JAM) (the "MHI Action"), alleging their images, likenesses, and advertising ideas appeared in advertisements for MHI's gentlemen's club, Mr. Happy's ("Mr. Happy's" or the "Club") and that said appearance occurred without any Plaintiff's

consent and without payment.[1] Based on these and other allegations, Plaintiffs asserted liability and entitlement to damages for: (1) violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B); (2) violation of their right of publicity; (3) violation of the Connecticut Unfair Trade Practices Act,  ("CUTPA"), "), Conn. Gen. Stat.§ 42-110b; e) defamation; and f) various common law torts. *See generally*, MHI Complaint, ¶¶ 87-177.

### *The Clear Blue Policies*

Plaintiffs' images, likenesses, and ideas appeared in MHI advertising during periods of time spanning August 9, 2017 to August 9, 2018. MHI was insured by Clear Blue during this time under Policy No. AE05-00000208-00 (the "Policy"). Compl., ¶¶ 21-22. The Policy expressed an insuring agreement for "Personal and Advertising Injury":

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising" injury to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages….  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

*Id.*, ¶¶ 25-26.  The Policies combine definitions with specific offenses of "personal injury" and "advertising injury" in a single subsection, "Personal and Advertising Injury":

(a) False arrest, detention, or imprisonment;

(b) Malicious prosecution;

(c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

(d) Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods,

---

[1] *See* ECF No. 1, Complaint ("Compl."), ¶¶ 1-2. A copy of the underlying complaint in the MHI Action (the "MHI Complaint") is annexed as Exhibit 1 to Defendant's motion. *See* ECF No. 39-1. Jessica Hinton was not named in the original complaint against MHI, but during discovery Plaintiffs learned that her images had been used in MHI advertising and MHI assigned to her (as well as the other Plaintiffs) its rights to sue Clear Blue for breach of the insurance contract.

products or services;

(e) Oral or written publication, in any manner, of material that violates a person's right of privacy.

(f) The use of another's advertising idea in your "advertisement;" or,

(g) Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*Id.*, ¶¶ 26-28. The Policy defined "Advertisement" as "notice that is broadcast to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters," specifically including "material placed on the internet or on similar electronic means of communication." *Id.*, ¶ 29. Clear Blue concedes in its Motion that Plaintiffs' allegations against MHI triggered "Personal and Advertising Injury" coverage under the Policy. *See* Mov. Br. at 2 ("[T]he underlying Complaint does allege a 'personal and advertising injury' offense, specifically, a publication that violates a person's right of privacy….."); *see also,* Mov. Br. at 10 ("Clear Blue does not dispute that the conduct alleged in the Underlying Lawsuit…implicates the offense set forth in subpart (e) of the Policy's definition of 'personal and advertising injury.'")

As relevant here, the Policy includes an endorsement with an Exhibitions and Related Marketing Exclusion (the "Exhibition Exclusion"). *See* Mov. Br. at 7-8.  Pursuant to this endorsement, Clear Blue argues it appropriately excised from its definition of "Personal and Advertising Injury" *all* the advertising injury coverage provided in subsections (f) and (g), and two types of the personal injury coverage set forth in subsections (d) and (e) as pertains to "Exhibitions and Related Marketing," which it defined as:

(a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, **promotional events**, **celebrity image or likeness**, literary

> works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.
>
> (b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.
>
> (c) Merchandising, advertising or **publicity programs** or material for the operations and material described in (a) or (b) above.

Mov. Br. at 7 (emphasis added). As discussed further *infra*, Clear Blue chose not to define "celebrity" "commercial," "promotional event," or "publicity programs" in the Policy.

### ***MHI Tenders the Claim to Clear Blue and Clear Blue Denies Coverage***

MHI timely tendered the defense of the MHI Action to Clear Blue.  Compl., ¶ 33. Clear Blue denied both defense and indemnity. Compl*.*, ¶ 35. Due to the wrongful denial, Plaintiffs and MHI entered into a settlement agreement whereby MHI assigned its claims against Clear Blue to the Plaintiffs.

### ARGUMENT

### I.    <u>Standard on a Rule 12(c) motion.</u>

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings'" Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim," *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (cleaned up), as "[i]n both postures, the district court must accept all allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). "The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." *Id.* (citation omitted).

## II.    Relevant insurance authority.

***Rules of Construction***: "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract…" *Enviro Express, Inc. v. AIU Ins. Co.*, 279 Conn. 194, 199 (2006), and will be evaluated "from the perspective of a reasonable insured." *Gibson v. First Mercury Ins. Co.*, 633 F.Supp.3d 627, 646 (D. Conn. 20220); *see also Ceci v. Nat'l Indem. Co.*, 225 Conn. 165, 168 (1993) ("The provisions of [an insurance policy] cannot be construed in a vacuum …. They should be construed from the perspective of a reasonable layperson in the position of the purchaser of the policy.") A policy provision will be deemed "ambiguous when it is reasonably susceptible to more than one reading," *Metropolitan Life Ins. Co. v. Aetna Casualty & Surety Co.*, 255 Conn. 295, 205 (2001), and "any ambiguity in the terms of an insurance policy must be construed in favor of the insured," *Enviro*, 279 Conn. at 199, as the "interpretation of ambiguous policy language in favor of coverage under the doctrine of contra proferentem has become near axiomatic in insurance coverage disputes." *Connecticut Ins. Guaranty Assn. v. Fontaine*, 279 Conn. 779, 788-89 (2006). As the Connecticut Supreme Court has explained:

> The premise behind [this] rule is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests.... A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter.... This canon ... is more rigorously applied in the context of insurance contracts than in other contracts.

*Israel v. State Farm Mu.t. Automobile Ins. Co.*, 259 Conn. 503, 508-09 (2002).

While "the insured bears the burden of showing that a loss is covered under an insurance policy… the insurer bears the burden of showing that an exclusion applies to exempt it from

covering a claim." *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F.Supp.3d 394, 406 (D.Conn. 2017) (citing *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011)). "[P]olicy exclusions are strictly construed in favor of the insured," *Wentland v. Am. Equity Ins. Co.*, 267 Conn. 592, 600-01 (2004), and ambiguous language in an exclusion "should be construed in favor of the insured unless [the court] has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 796 (2009).  Finally, "[u]nder Connecticut law, exclusionary language that altogether eliminates coverage renders coverage illusory." *Gibson*, 633 F.Supp. 3d at 646 (citing *Karas v. Liberty Ins. Co.*, 335 Conn. 62, 106 (2019).

    ***Duty to Defend***:  The "question of whether an insurer has a duty to defend is purely a question of law, which is to be determined by comparing the allegations [in the underlying] complaint with the terms of the insurance policy." *Cmty. Action for Greater Middlesex County, Inc. v. American Alliance Ins. Co.*, 254 Conn. 387, 395 (2000) "[A]n insurer must defend its insured 'whenever the allegations in a complaint against the insured fall within the scope of risks undertaken by the insurer, regardless of how false of groundless those allegations might be.'" *Value Wholesale, Inc. v. KB Ins. Co., Ltd.*, 450 F.Supp.3d 292, 303 (E.D.N.Y. 2020) (quoting *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94-95 (2d Cir. 2018)). As the Second Circuit has made clear, "[i]f *any of the claims* against the insured *arguably* arise from covered events, the insurer is *required* to defend the entire action." *High Point Design*, 911 F.3d at 94-95 (emphasis added).  Considering this, an

> insurer may deny its insured a defense only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy.  If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend.

*Id.* at 95 (internal quotations and citations omitted) (emphasis added).

III.    **The Exhibition Exclusion does not excuse coverage and is ambiguous.**

The Exhibition Exclusion is Clear Blue's only justification for not providing coverage to MHI. *See* Mov. Br. at 10.

Clear Blue argues it was excused from providing "coverage for certain 'personal and advertising injury' offenses when they arise out of the use of *celebrity images in marketing efforts*…." Mov. Br. at 2 (emphasis added).  Though repeatedly asserting that Plaintiffs' allegations against MHI were based on the use of "celebrity image and likeness,"[2] Clear Blue concedes it did not define "celebrity" in its Policy and it does not attempt to define it in its Motion. What's more, the word "celebrity" appears nowhere in Plaintiffs' complaint against MHI and there is no evidence in the record any Plaintiff is a "celebrity."  Also absent from Plaintiffs' claims against MHI is any assertion any Plaintiff is "famous." While Plaintiffs did allege in the MHI Complaint that they were "well known professional models," and some listed certain modeling credits, that they are well-known within the modeling industry does not equate to "celebrity," a nebulous (at best) term which Clear Blue did not define despite drafting an exclusion that turns on it. Just as an individual can be a "well known" or even "internationally known" lawyer, judge, or doctor without being a "celebrity," one can also be a "well known" professional model without being a "celebrity."

Allowing Clear Blue's position to stand, the Policy provides no potential coverage for, *inter alia*, claims relating to "oral or written publication" of "material that violates a person's right of privacy," so long as those activities arose out of "exhibitions and related marketing," which Clear Blue defined as, *inter alia*, the "publication" or "celebrity image and likeness" on "social media." *See* Motion at 6-7. This means that before its duty to defend is excused, Clear

---

[2] *See* Motion at 1 ("This insurance coverage dispute arises from a strip club's unauthorized use 'internationally known' *celebrity* images…."); *Id.* at 2 (arguing the Exhibitions Exclusion "applies only to a subset of offenses involving defined marketing-related subject matter, such as *celebrity* images…."); *Id*. at 13 (arguing the MHI advertisements "plainly constitute 'publicity or material' for 'promotional events' involving the exploitation of '*celebrity* image or likeness' in social media….") (emphasis added in all).

Blue's burden is to demonstrate *each Plaintiff's* claims against MHI related to the publication of "celebrity image or likeness."  Clear Blue does not even approach this burden, as underscored by Clear Blue's reference to Plaintiffs' allegations against MHI, including that: Gibson is a successful model with a motor sport following; that Pepaj is an "in-demand" runway model who has appeared in a Diet Coke commercial; that Nobriga has appeared on Deepak Chopra's YouTube channel; that Voronina appeared in *Playboy* 24 years ago; that Leigh appeared in *Playboy* 19 years ago; and that Mayes was a "suitcase model" on *Deal or No Deal* (which last appeared on television 15 years ago). *See* Mov. Br. at 4-5.  Clear Blue does not even attempt to explain how such allegations equate to "celebrity" and it has thus fallen far short of its burden of demonstrating Plaintiffs' claims against MHI triggered the Exhibition Exclusion. In the words of the Connecticut Supreme Court in *Israel*, as the drafter of the exclusion, Clear Blue was "guided by its own interests" in using the "imprecise" term "celebrity" and choosing not to define that term in its Policy. *Israel*, 259 Conn. at 508-09.  It may not redraft Plaintiffs' allegations now to come within the ambit of its exclusion.

Contrary to Clear Blue's baseless assertion that Plaintiffs' "claims rise and fall on their celebrity status," Mov. Br. at 12-13, *none of the Plaintiffs' claims* were based on any alleged status any one of them had as a "celebrity." Rather, their causes of action were based on allegations they are each professional models who had their images misappropriated for use in commercial advertising and that said use made it appear that they were strippers at Mr. Happy's:

> Each of the Plaintiffs' Images were misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed, or were otherwise associated, affiliated, or connected with Mr. Happy's Café.

> In the case of every Plaintiffs, such appearance was false.

MHI Complaint, ¶¶ 24-25. Rather than allege they were "celebrities," Plaintiffs alleged that they were professional models who had a reputation to protect within the modeling industry:

> Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize

> earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining their brands, Plaintiffs are necessarily selective concerning the companies, and brands for which they choose to model.

*Id.*, ¶ 23.

Vitally, and fatal to Clear Blue, Nobriga's allegations do not mention modeling at all; rather, they assert she is a professional therapist:

> Nobriga is a trained as a psychotherapist and works as a professional coach with individuals and corporations, both nationally and internationally.  She obtained her masters degree in Clinical Psychology, specializing in Mind-Body Psychotherapy from The Chicago School of Professional Psychology.  Alyssa is currently the faculty of the University of Santa Monica where she holds a second masters degree in Spiritual Psychology, with an emphasis on Consciousness, Health and Healing.

MHI Complaint, ¶ 28.  Insofar as a duty to defend one claim is a duty to defend all, *see High Point Design*, 911 F.3d at 94-95, Clear Blue's duty to defend MHI could only be excused if it can demonstrate that *each Plaintiff* is a "celebrity" and that each of their claims arose from that "celebrity" status.  This is because if one of the Plaintiffs is *not* a celebrity, then her claims necessarily do not arise out of the publication of "celebrity image and likeness," which means, *first,* that the Exhibition Exclusion could not apply to excuse its duty to defend MHI as to that Plaintiff's claims, and, *second,* that Clear Blue's duty to defend the entire case would thus be triggered. Of course, having failed to demonstrate any Plaintiff is "celebrity," Clear Blue has failed at its burden of demonstrating *each* is a celebrity, but that Nobriga's allegations say nothing about modeling (let alone "celebrity") further underscores why the Exhibition Exclusion could not be triggered as to her claims.

Allegations that *some* of the Plaintiffs are talented and/or successful models -- who deem it important to protect their reputation within the modeling industry by not having it stated or implied that they are strippers -- is a far cry from Clear Blue being able to demonstrate, as a matter of law, each Plaintiff is a "celebrity." Again, a lawyer or doctor could also value her reputation in her field and take steps to protect it if she felt her image and likeness was being

misused and could assert the exact causes of action Plaintiffs did.  This is because -- contrary to Clear Blue's argument -- no claim turned on any allegation of "celebrity" because no cause of action required a Plaintiff to be a "celebrity." Rather, what is forbidden under Connecticut law is, *inter alia*, the misuse of a person's image and likeness in commercial advertising without their consent. *See In re Jackson*, 972 F.3d 25, 34-35 (2d Cir. 2020) ("The right of publicity imposes liability on "[o]ne who appropriates to his own use or benefit the name or likeness of another.'" (quoting Restatement (Second) of Torts § 652C (Am. Law Inst. 1977)) (applying Connecticut law). "Celebrity" is not a prerequisite and gauging whether a person is a "celebrity" does not enter the analysis.

Although employing the phrase "celebrity image or likeness" in its exclusion -- and now relying on it to justify its refusal to defend MHI -- Clear Blue does not define it in the Policy and carefully sidesteps any discussion of what the phrase means in its Motion. As such, Clear Blue asks this Court to take four quantum leaps: (1) determine as a matter of law what the definition of "celebrity" is; (2) determine as a matter of law that Plaintiffs are in fact "celebrities" based simply on the fact that they either are or were in the past professional models; (3) determine as a matter of law that Plaintiffs' allegations arise from their status as celebrities; and then (4) determine as a matter of law that Clear Blue's refusal to defend MHI is correct and in good faith due to each Plaintiff's "celebrity" status.

Under entrenched Connecticut law, the Court must reject such invitation because ambiguous language in an exclusion "should be construed in favor of the insured unless [the court] has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Liberty Mutual,* 290 Conn. at 796. As recognized by the Connecticut Supreme Court in *Israel*, as the author of the exclusion, Clear Blue could have easily drafted it to exclude claims based on the use in advertising of a "*individual* image or likeness" as opposed to "*celebrity* image or likeness."  But Clear Blue chose the word "celebrity."  Having the pen and written an exclusion that turns on its insured's publication of "*celebrity* image or likeness," Clear Blue's burden before being relieved of its duty to defend (and on its Rule 12 motion) is to

demonstrate as a matter of law each Plaintiff's claims did in fact arise from the publication of a "celebrity image or likeness" as this Court must give meaning to all terms in the policy and exclusion. This Clear Blue has not even attempted to do and since Plaintiffs' claims are not based on allegations MHI used *celebrity* image or likeness, the exclusion does not excuse Clear Blue's coverage obligations.

In this same vein, courts across the country, including the Second Circuit, evaluating cases involving misappropriation of likeness claims akin to those asserted by Plaintiffs against MHI have consistently held that whether a professional model is a "celebrity" *is a question of fact:*

> There is a genuine issue of fact as to whether Plaintiffs are recognizable to members of the community for which Defendant's advertising is focused. For cases involving alleged celebrities, a strong mark is demonstrated by how recognizable the celebrity is amongst relevant consumers. *White v. Samsung Elecs. Am, Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992). Plaintiffs have presented a survey indicating a small percentage of those surveyed felt they recognized Plaintiffs. They have also provided evidence that they have a strong social media following. Defendant has submitted no counter-survey. However, Defendant has pointed to evidence that suggests Plaintiffs celebrity success appears to be in the past, and their current recognizability is questionable. The scale for this factor could tip to either side.

*Skinner v. Tuscan, Inc.*, 18-cv-00319-TUC-RCC, 2020 WL 5946898, at *12 (D. Ariz. Oct. 7, 2020); *see also, Gray v. LG&M Holdings, LLC*, 18-cv-02543-PHX-SRB, 2020 WK 6200165, at *6 ("The jury could conclude that since 16% of respondents recognized Plaintiffs, Plaintiffs are sufficiently recognizable; or it could conclude than since 84% of respondents did not recognize Plaintiffs, Plaintiffs are too obscure. Or the jury could attribute little weight to any percentages from Mr. Buncher's survey based on problems with the representativeness of the sample or other problems with the methodology.").

Analyzing Lanham Act claims brought by professional models (like those asserted by the Plaintiffs here), the Middle District of Florida declined to find any model was a "celebrity," concluding instead that (as Plaintiffs alleged against MHI) each plaintiff was "a reputable model with a track record for modeling work." *Gibson v. Resort at Paradise Lakes, LLC*, 8:16-cv-791-

T-36AAS, 2018 WL 10373435, at *8 (M.D. Fla. Feb. 2, 2018); *accord, Edmondson v. 2001 Live, Inc.*, 8:16-cv-03243-T-17AEP, 2019 WL 670201, at *7 (M.D. Fla. Jan. 15, 2019) ("[T]he law is clear that celebrity status is not required to maintain" a false endorsement case under the Lanham Act).

Earlier this year, a magistrate judge in the District of Massachusetts recommended that the district court decline to enter a default judgment on plaintiffs' behalf against a non-appearing defendant due to the lack of allegations of celebrity status in their complaint (which largely mirrored Plaintiffs' complaint against MHI), noting:

> [P]laintiffs are professional models who earn income through modeling and by licensing their images for commercial advertising purposes…[but] the complaint fails to plead facts that would suggest any plaintiff was so well known and recognizable that her image alone might misleadingly be taken as a celebrity endorsement of the defendant's nightclub.

*Canas v. Brama 1, Inc.*, 23-cv-11762-DLC, 2025 WL 2319106, at *2, 5 (D. Mass. Aug. 12, 2025). Accepting in part and rejecting in part the magistrate's recommendation, the district court in *Canas* did not dispute the lack of celebrity allegations but nevertheless held that plaintiffs were entitled to a judgment on their false association claim because "universal celebrity is not a prerequisite" to such claim. *Canas v. Brama 1, Inc.*, 23-cv-11762-NMG, 2025 WL 2792975 , at *2 (D. Mass. Sept. 30 2025). Put another way, even though the plaintiffs did not allege they were celebrities, they could nevertheless maintain a false association claim under the Lanham Act. In so holding, the district court approvingly quoted a recent class action case in the Southern District of New York in which "well-known and sought after" voice over actors had asserted a false association claim under the Lanham Act.  That court also concluded that some false association plaintiffs "have prevailed even when they are not 'celebrities' in the traditional sense." *Lehrman v. Lovo, Inc.,* 2025 WL 1902547, at *8-9 (S.D.N.Y. July 10, 2025) (citing *Albert Furst von. Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04-cv-6107, 2006 WL 2289847, at *, 11 (S.D.N.Y. Aug. 8, 2006) (use of a European royal family's name by a "distant cousin" to promote his business activities sufficient to state a false association claim).

*Lehrman* is instructive, as it underscores that, as noted *supra*, an individual may in fact be "well-known and sought after" within her industry – there, professional voice over actors; here, professional models -- without achieving "celebrity" status.

In *Souza v. Exotic Island Enterprises, Inc.*, 68 F.4th 99, 113 (2d Cir. 2023), the Second Circuit considered right of publicity and Lanham Act claims brought by professional models-- including two Plaintiffs in this case, Ursula Mayes and Jessica Hinton -- and affirmed the district court's finding that these models "fell well short of establishing that any Plaintiff was sufficiently recognizable to establish a strong [trade]mark." *See also, Bondar v. LASplash Cosms.,* 12-cv-1417-SAS, 2012 WL 6150859, at *5, 7 (S.D.N.Y. Dec. 11, 2012) (noting that while "celebrities have a trademark-like interest in their name, likeness, and persona" the "misappropriation of a completely anonymous face could not form the basis for a false endorsement claim.").

It is against this backdrop of the much litigated and nebulous term "celebrity" that Clear Blue asks this Court to (1) define "celebrity," (2) to determine as a matter of law Plaintiffs are in fact "celebrities," and (3) to conclude MHI's use of their "celebrity image and likeness" triggered the Exhibition Exclusion.  The Court is not equipped to do so on a Rule 12 motion, and since no Plaintiff's allegations against MHI turned on their status as a "celebrity" the Court cannot conclude as a matter of law Clear Blue's duty to defend was excused.

Clear Blue next takes a few confused stabs at Plaintiffs' damage theory against MHI, again attempting to rewrite the MHI Complaint by arguing Plaintiffs' claims were distinguishable from those of "private individuals" because their damage claim was not based in "any loss of private dignity but in the supposed diminution of their marketable celebrity identities." Mov. Br. at 13. But this is belied by Plaintiffs' allegations:

> Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers. This is especially so insofar as each of the Plaintiffs' Images have been associated with a strip club, and the implication of Defendant's use of Plaintiffs' Images is that she is an employee working in a sexually-oriented business.

MHI Complaint, ¶ 74-75.  One does not need to be a "celebrity" to assert her right of publicity

was violated in Connecticut and Clear Blue provides no authority to the contrary because none

exists. Though deeming the alleged distinction between a "private individual" and a "celebrity"

to be "critical" to Plaintiffs' claims against MHI, *see* Mov. Br. at 12, Clear Blue fails to articulate

how "celebrity" status was a precondition to any claim Plaintiffs asserted against MHI. The

reason for this omission is that no such precondition exists, as a "private individual" doctor or

lawyer could assert the exact state law claims Plaintiffs asserted against MHI.[3]  While a "private

individual" doctor or lawyer may not have Lanham Act standing because they have never

commercialized their image and likeness (and thus, unlike Plaintiffs, have no trademark rights in

it), all authority on this issue confirms that, as noted *supra*, celebrity-status is not required for

Lanham Act standing. *See, e.g. Bondar*, 2012 WL 6150859, at *7 ("[T]here is a level of

consumer recognition short of celebrity – as the term is usually understood – capable of causing

consumer confusion.").[4]

Again attempting to redraft Plaintiffs' claims, Clear Blue next tells the Court that

"Plaintiffs cannot plausibly claim that they are both celebrities commanding international

recognition and as the same time ordinary individuals entitled to reputations or dignitary

damages untethered to commercial value," Mov. Br. at 13-14, but: (1) Plaintiffs can in fact argue

reputational damage and did; and (2) Plaintiffs never claimed they were "celebrities commanding

---

[3] It is for this reason that even if Clear Blue could demonstrate as a matter of law each Plaintiff is a "celebrity," it could not demonstrate that each claim asserted by each Plaintiff arose out of the use of "celebrity image and likeness."

[4] In support of this statement, the *Bondar* court cited, *inter alia*, *Doe v. Friendfinder Network, Inc.*, 540 F.Supp.2d 288, 306 (D.N.H. 2008) -- where a private individual whose image was used in connection with an advertisement for a casual sex website – was found to have a false association claim and *Hauf v. Life Extension Foundation*, 547 F.Supp. 2d 771, 777 (W.D. Mich. 2008), where the court denied a motion to dismiss a false association claim on the ground that a non-celebrity cancer survivor "may be able to demonstrate notoriety among cancer patients or advocates of alternative medicine that is strong enough to have commercial value within the identifiable group."). These cases further support Plaintiffs' position that "celebrity" status is a not a prerequisite for Lanham Act standing.

international recognition" or that they were "easily recognizable to the public." They claimed they were professional models with certain credits and social media followers who had achieved recognition in the modeling industry. Even if they had achieved international recognition as a model -- Kazdova and Voronina, both of whom were born abroad, alleged that they were "international models" because they are -- that also does not equate to "celebrity." This Court must reject Clear Blue's desperate attempts to interchange "professional model" with "celebrity" when it was Clear Blue who declined to define "celebrity" in the first instance.

IV.     **The MHI advertisements are not "Publicity Programs" for "Publicity Events."**

Since Clear Blue cannot prove Plaintiffs' claims against MHI arose out of its publication of "celebrity image or likeness," it has failed to demonstrate Plaintiffs' claims were within the Exhibition Exclusion.  Clear Blue also alludes to (but declines to develop) an argument that the requisite "subject matter" may include a "promotional event," *i.e.*, that MHI's alleged "publication" of "publicity programs" for a "promotional event" on "social media" would also excuse its defense obligations. *See* Mov. Br.  at 14. Not only did Clear Blue decline to define the imprecise terms "publicity program" or "promotional event" in its Policy (or suggest a definition of either in its Motion), but this argument turns on the claim that MHI's advertisements -- which promoted Mr. Happy's and parties thereat -- were not advertisements but rather "plainly constitute 'publicity programs' for 'promotional events' events involving the exploitation of 'celebrity image or likeness' in social media…." Mov. Br. at 14-15

This argument is based on the same flawed "exploitation of celebrity image or likeness" argument discussed *supra* and must therefore be rejected. Even if it were not, it would nevertheless fail because Clear Blue is attempting to equate "advertisement" (which is a defined term in the Policy) with "publicity program" (which is not). "Advertisement" and "publicity

program" are not synonymous, Clear Blue offers no definition of "publicity program," and this Court should not and may not strain to equate the two.

What's more, the MHI advertisements at issue in the underlying case are advertising parties or events at MHI's strip club, full stop. The most reasonable definition of a "promotional event" is not a party at a strip club but rather an "event" thrown in furtherance of *promoting* something, *i.e.*, a movie premiere, a book launch, a charity auction. But since Clear Blue did not bother to define "promotional event" in its Policy or suggest a coherent definition of it in its Motion, Clear Blue has failed for purposes of a Rule 12 motion of demonstrating as a matter of law the subject MHI advertisements were "publicity programs" for a "promotional event."

**V.    Clear Blue's render of its exclusion makes "Personal and Advertising Injury" <u>coverage illusory</u>.**

Further, "Exhibition" must mean something more than ordinary business; otherwise, the Exhibition Exclusion swallows the whole of insurance coverage afforded for advertising injury, rendering any coverage illusory. Though Clear Blue devotes a portion of its Motion to the Fifth Circuit's decision in *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 84 F.4th 274 (5th Cir. 2023) ("*A.H.D. Houston*") and the District of Rhode Island's decision *Princeton Excess and Surplus Lines Ins. Co. v. R.I. Cranston, Inc.*, 725 F.Supp.3d 184 (D.R.I. 2024) (*R.I. Cranston*) -- both of which interpreted an identical Exhibition Exclusion -- in neither of those cases (both decided at summary judgment and not on a Rule 12 motion) did the insurer argue its coverage obligations were excused due to underlying allegations against its insured of the publication of "celebrity image or likeness," as Clear Blue urges here. Rather, the courts reached (conflicting) holdings concerning whether the Exhibition Exclusion rendered all "Personal and Advertising Injury" coverage illusory, with the *R.I. Cranston* court concluding that the "Policy and Exclusion are clearly worded, specific, and directly contradictory to each other." *R.I.*

*Cranson*, 725 F.Supp.3d at 194.  Considering Clear Blue's distinct argument MHI's alleged publication of "celebrity image and likeness" excused its duty to defend, those summary judgment decisions are irrelevant to Clear Blue's attempt to excuse its coverage obligations.

With that said, Clear Blue's attempt, discussed *supra*, to equate and conflate "publicity programs" for "promotional events" with "advertisement" underscores the illusory nature of the advertising injury coverage it sold MHI under Clear Blue's suggested interpretation of its exclusion. This is because after selling MHI advertising injury coverage for claims relating to "f. The use of another's advertising idea in your 'advertisement'" and "g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement,'" it then took that coverage away for any claims based on the "publication" of "commercials" and "publicity programs" for "promotional events," *i.e*, "advertisements." Put another way, it excluded advertising injury coverage for any claims based on the publication of an advertisement, which is the definition of illusory coverage.

Clear Blue's suggested definition of "publicity program" for a "promotional event" puts the lie to its argument that the Exhibition Exclusion "applies only to a subset of offenses involving defined marketing-related subject matter, such as celebrity images or promotional events…." Mov. Br. at 2. To the contrary, following Clear Blue's absolute illogical extension, it applies to *all* advertisements.  Clear Blue's suggestion of supposed advertising injuries for which -- it claims, baldly, and without consequence -- it would provide coverage is obviously of no help because most of these suggestions *are not advertisements. See* Mov. Br. at 17 (listing defamatory emails concerning a former employee' theft, false emails concerning drug abuse, false statements about rival nightclub owners, group text messages with a patron's credit card receipt, and security footage of staff members using a restroom).  Whether Clear Blue might cover claims

relating to such offenses have nothing to do with the "advertising injury" coverage MHI purchased.

Further, and as discussed *supra*, while the activities Clear Blue suggests, *see* Mov. Br. at 18, under offenses (f) and (g) are advertisements, allowing Clear Blue's interpretation -- in the face of its failure to define "publicity programs" for "promotional events" and attempt to interpret those terms as being equated to "advertisements" -- gives Clear Blue free reign to disclaim any duty to defend or indemnify any and all allegations involving any sort of advertising activity. And, Clear Blue's interpretation of its Exhibition Exclusion is that it is excused from any duty of defense or indemnity for any claim arising out of or related to that involves any publication involving any commercials or advertisements in *any medium.* This interpretation renders the exclusion to trump the entire scope of potential coverage, swallowing the whole of "advertising injury."  This Court must therefore conclude that this interpretation renders any coverage to be illusory, disallowing application of the exclusion as a matter of law.

Here, Clear Blue has moved for judgment on the pleadings based on its theory MHI published "celebrity images and likenesses." It did not define "celebrity" in its Policy; it did not offer a definition in its Motion; it did not attempt to demonstrate each Plaintiff is a "celebrity" in its Motion; it does not suggest any argument why each Plaintiff's allegations against MHI should be construed as arising from the publication of "celebrity image and likeness" when "celebrity" is clearly not a prerequisite to any claims; and it is foreclosed from offering any such arguments on reply.[5] As such, Clear Blue has failed to meet its steep Rule 12 burden for dismissal of Plaintiffs' complaint.

---

[5] *See Dressler v. U.S.*, 3:21-cv-1055 (JCH), 2022 WL 3107313, at * (D. Conn. Aug. 4, 2022) ("Arguments put forth for the first time in a reply brief are waived because they deprive the opposing party of an opportunity to brief the new issues.") (citations omitted).

**VI.     Because Clear Blue has a duty to defend MHI, the Court must defer a decision on its duty to indemnify until after trial.**

Since Clear Blue has not met its burden of demonstrating as a matter of law it is relieved of its duty to defend MHI, it has also necessarily failed to demonstrate that it is relieved of its duty to indemnify it. A determination of Clear Blue's indemnification obligations will be based on facts ultimately determined at trial and as such the Court must defer a decision on such obligations at this time.

## CONCLUSION

The Court should deny Clear Blue's Motion.

To the extent the Court is inclined to dismiss Plaintiffs' Complaint on any grounds, Plaintiffs request leave to amend to address any perceived deficiencies therein.

Dated: November 20, 2025

By: */s/ John V. Golaszewski*
THE CASAS LAW FIRM, P.C.
1325 Ave. of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
john@talentrights.law
* *admitted Pro Hac Vice*

Matthew C. Mason (ct 15291)
GREGORY AND ADAMS, P.C.
190 Old Ridgefield Road
Wilton, CT 06897
(203) 762-9000
mmason@gregoryandadams.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 20, 2025, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically generate and send a Notice of Electronic Filings to the registered users of record in the matter.

*/s/ John V. Golaszewski*
John V. Golaszewski