**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

ALYSSA NOBRIGA, EVA PEPAJ, JESSICA HINTON, IRINA VORONINA, MONICA LEIGH, and URSULA MAYES, as assignees of MR. HAPPY, INC.,

               Plaintiffs,

     v.

CLEAR BLUE SPECIALTY INSURANCE COMPANY,

               Defendant.

Case No.: 3:24-cv-01980-SVN

**CLEAR BLUE SPECIALTY INSURANCE COMPANY'S REPLY**
**IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, Clear Blue Specialty Insurance Company ("Clear Blue"), for its Reply in Support of its Motion for Judgment on the Pleadings, states as follows:

## I.    INTRODUCTION

Plaintiffs' opposition confirms that the material facts are not in dispute and that the allegations in the underlying complaint state, at most, a claim for publication of material violating a person's right of privacy. The dispositive question remains whether the Exhibitions and Related Marketing Exclusion (the "ERM Exclusion") bars coverage for those alleged injuries. Plaintiffs offer several theories to avoid that exclusion, but each rests on either a selective reading of the Policy, a mischaracterization of their own underlying allegations, or a misapplication of Connecticut law. None alters the unavoidable conclusion that the ERM Exclusion applies to the conduct alleged.

Clear Blue's Motion applies the exclusion exactly as written. The exclusion does not require a showing that any Plaintiff is an "A-list" celebrity. It does not incorporate the Lanham Act's distinct notions of consumer recognition or trademark strength. It does not depend on

subjective notoriety but instead on whether the alleged injury arose out of the publication, exploitation, or dissemination of image or likeness in connection with promotional or entertainment events through mediums such as social media or other advertising channels. Plaintiffs' allegations satisfy the exclusion's causal nexus element in every respect.

Plaintiffs attempt to avoid this result by magnifying one word, "celebrity," and ignoring the remainder of the multi-component definition. They assert that discovery would be required to determine whether they are celebrities. They argue that the exclusion is ambiguous because the Policy does not define that term. They characterize themselves as "private individuals" whose claims arise from reputational injury rather than commercial exploitation. These positions cannot be reconciled with the plain language of the exclusion or with Plaintiffs' own allegations in the underlying complaint, where Plaintiffs repeatedly assert public notoriety, professional prominence, commercial value in their likenesses, and substantial social media presence.

Even if Plaintiffs were correct that the term "celebrity" required construction, the exclusion does not depend solely on that term. It reaches promotional events, advertising and publicity programs, and the publication or distribution of likenesses in any medium, including social media. The underlying allegations fit comfortably within each independent prong. Connecticut law requires giving effect to all terms of an exclusion and enforcing clear language according to its ordinary meaning. *Galgano v. Metro. Prop. & Cas. Ins. Co.,* 838 A.2d 993, 997 (Conn. 2004) ("If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning.") (quoting *Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.,* 819 A.2d 773, 789 (Conn. 2003)). When applied under that framework, the exclusion eliminates any possibility of coverage, which defeats the duty to defend.

Plaintiffs also recycle an illusory coverage argument that a federal appellate court has already rejected. *See Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 84 F.4th 274 (5th Cir. 2023). The exclusion leaves multiple "personal and advertising injury" offenses intact and applies only to a subset of offenses under defined circumstances. It does not swallow the coverage grant.

The opposition adds no factual or legal basis to disturb any component of Clear Blue's analysis. Judgment on the pleadings is therefore appropriate.

## II. PLAINTIFFS' CLAIM OF AMBIGUITY MISCHARACTERIZES BOTH THE POLICY AND THE UNDERLYING ALLEGATIONS

Plaintiffs' principal argument is that the exclusion is ambiguous because the term "celebrity" is not defined. This argument fails for several reasons. The exclusion contains a comprehensive and integrated definition of "exhibitions and related marketing" composed of multiple independent clauses, any one of which, if satisfied, bars coverage. The clause referencing "celebrity image or likeness" is simply one among many. Plaintiffs ignore the remainder of the definition, including the references to promotional events, advertising programs, publicity materials, theatrical or entertainment exhibitions, and publication or exploitation through media ranging from videos to social media. Connecticut courts do not analyze policy terms in isolation and routinely reject attempts to create ambiguity by excising a single term from a larger defined phrase. *See Levine v. Massey*, 654 A.2d 737, 740–41 (Conn. 1995) ("A court cannot import into an agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms.") (citation modified). The definition must be applied as a whole. *Warzecha v. USAA Cas. Ins. Co.,* 259 A.3d 1251, 1255 (Conn. Ct. App. 2021) (noting that where a term is defined in the policy, the court is "bound by that plain language and cannot read the policy differently").

3

Even if the Court considered only the clause referencing celebrity image or likeness, the term "celebrity" in this context is not ambiguous. Ordinary meaning governs unless a policy provides a specialized definition. *See id.* Plaintiffs' own allegations in the underlying complaint portray themselves as internationally known models, television personalities, commercial spokespersons, professional entertainers, and individuals with extensive social media followings and public recognition. These are precisely the attributes that create marketable identity rights used in promoting commercial events and entertainment venues. Plaintiffs cannot now retreat from their own allegations to argue that they were private individuals whose likenesses lacked public significance.

Plaintiffs also conflate ambiguity with factual dispute. They assert that because celebrity status can involve gradations of recognizability in certain Lanham Act contexts, the term must be ambiguous here. But coverage interpretation does not incorporate the Lanham Act's consumer recognition framework. The Court need only compare the allegations with the policy language, not weigh degrees of fame. The allegations describe models and entertainers whose identities allegedly carry commercial value. That is sufficient to bring the alleged conduct within the definition.

The exclusion is therefore not ambiguous, and Plaintiffs' argument that the exclusion fails because "celebrity" lacks a definition is legally unsustainable.

III. **PLAINTIFFS MISSTATE THE UNDERLYING ALLEGATIONS AND DISREGARD THAT ALL CLAIMS ARISE FROM PROMOTIONAL EVENT ADVERTISING**

Plaintiffs repeatedly claim that their injuries arose from the suggestion that they were strippers or associated with the club. They contend in their Response that the harm concerns reputational damage within their industry rather than commercial exploitation through event advertising. (ECF No. 40 at 8.) This reframing is inconsistent with the allegations in the underlying

complaint, which describe in detail that Mr. Happy used Plaintiffs' images in social media posts to promote themed events such as Halloween, Cinco de Mayo, St. Patrick's Day, and other special promotions offering drink specials, entrée specials, or other incentives. Plaintiffs expressly allege that these images were used to attract patrons, create publicity, and advertise particular events.

Such allegations fall within the definition of "exhibitions and related marketing." They describe the publication and dissemination of images in promotional event advertising, which is exactly the activity the exclusion targets. Whether Plaintiffs subjectively believe their reputation within the modeling industry was harmed does not alter the nature of the conduct alleged. The exclusion applies based on the conduct giving rise to the alleged injury, not the injury's label.

Further, Plaintiffs cannot avoid the exclusion by pointing to one Plaintiff, Ms. Nobriga, whose background includes coaching and therapeutic work. Plaintiffs' own allegations describe her as a media personality, published author, and featured guest on widely distributed digital platforms. In any event, the underlying complaint rests on a uniform and undifferentiated set of misappropriation allegations. Plaintiffs' suggestion that one Plaintiff falls outside the exclusion ignores that the advertising materials included multiple models indistinctly and were allegedly used interchangeably in event promotions. The duty to defend analysis is based on the substance of the allegations, not a plaintiff-by-plaintiff parsing never reflected in the underlying pleadings.

## IV.    THE ERM EXCLUSION DOES NOT RENDER COVERAGE ILLUSORY

Plaintiffs' argument that the exclusion renders all advertising injury coverage illusory fails for three independent reasons. First, Connecticut law provides that a coverage grant is illusory only when an exclusion eliminates all coverage promised by the policy. *Karas v. Liberty Ins. Corp.,* 228 A.3d 1012, 1038 (Conn. 2019) (an exclusion is illusory only if it "eliminates coverage altogether"). The exclusion here leaves multiple "personal and advertising injury" offenses untouched, including false arrest, malicious prosecution, and wrongful eviction. It also leaves

subparts (d) through (g) intact whenever the alleged conduct does not arise out of "exhibitions or related marketing." The exclusion is thus targeted and limited, not sweeping, and cannot reasonably be characterized as eliminating the entire coverage grant.

Second, Plaintiffs focus exclusively on the four offenses referenced in the exclusion and ignore the circumstances under which those offenses are excluded. That approach violates Connecticut's requirement that exclusions must be interpreted according to their terms. *Middlesex Ins. Co. v. Mara,* 699 F. Supp. 2d 439, 446 (D. Conn. 2010) (parties' intent is "derived from the plain and ordinary meaning of the policy's terms"). The exclusion applies only when the conduct arises from "exhibitions and related marketing." There is no basis to conclude that every publication or advertising injury claim an insured could ever face would fall within the exclusion. Plaintiffs' illusory coverage argument therefore fails on its own terms.

Third, courts applying identical language have rejected the same argument. In *A.H.D. Houston, Inc.*, the Fifth Circuit held that it did not render coverage illusory and reversed the district court for improperly segmenting the definition of "personal and advertising injury." 84 F.4th at 286. Plaintiffs attempt to dismiss this authority because the court did not parse the term "celebrity." However, the exclusion's structure and operation are identical, and the analysis applies with equal force here. Nothing in Connecticut law suggests courts would adopt Plaintiffs' segmented reading. The exclusion remains enforceable and fully operative under Connecticut law.

## V.    CONCLUSION

The ERM Exclusion eliminates any potential for coverage. The underlying allegations describe the publication, distribution, and exploitation of Plaintiffs' images in promotional event advertising disseminated through social media and other mediums. Those allegations fall within multiple independent prongs of the exclusion. Plaintiffs' efforts to generate ambiguity, recast the

6

allegations, or invoke illusory coverage doctrine do not withstand scrutiny under established Connecticut principles of contract interpretation.

Because the allegations fall entirely within an exclusion, Clear Blue had no duty to defend Mr. Happy and has no duty to indemnify Plaintiffs. Accordingly, Clear Blue respectfully requests that the Court grant the motion and enter judgment on the pleadings in its favor, declare that no coverage is owed, and award any further relief the Court deems appropriate.

Dated:  December 4, 2025            Respectfully submitted,

/s/ Jordon S. Steinway
Jordon S. Steinway, phv208278
Craig M. Leff, phv208946
Katherine A. Martin, phv208732
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Phone:  (312) 762-3169
Email:  jsteinway@batescarey.com
Email: cleff@batescarey.com
Email:  kmartin@batescarey.com

Michael J. Dugan, ct 18669
LITCHFIELD CAVO LLP
82 Hopmeadow Street, Suite 210
Simsbury, CT 06089
Phone:  (860) 413-2704
Email:  dugan@litchfieldcavo.com

*Counsel for Clear Blue Specialty Insurance Company*

24520.8842365

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 4, 2025, I electronically filed the foregoing document and all exhibits referenced therein with the Clerk of the Court using the CM/ECF System, which will send a notification of such filing to all counsel of record.

/s/ Jordon S. Steinway