**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ALYSSA NOBRIGA et al., | ) 3:24-CV-1980 (SVN) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| CLEAR BLUE SPECIALTY | ) |
| INSURANCE COMPANY, | ) July 10, 2026 |
| *Defendant*. | ) |

**RULING AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS AND MOTION FOR SUMMARY JUDGMENT**

Sarala V. Nagala, United States District Judge.

Plaintiffs Alyssa Nobriga, Eva Pepaj, Jessica Hinton, Irina Voronina,[1] Monica Leigh, and

Ursula Mayes are six professional models who allege their images, likenesses, and advertising

ideas appeared without their consent in advertising materials for Mr. Happy's Café d/b/a Mr.

Happy, Inc., ("Mr. Happy's"), an adult entertainment venue located in Waterbury, Connecticut.

Mr. Happy's purchased an insurance policy from Defendant Clear Blue Specialty Insurance

Company ("Clear Blue").  Plaintiffs, save Jessica Hinton, sued Mr. Happy's in underlying

litigation, and through a settlement agreement were assigned any rights, remedies, and claims Mr.

Happy's had against Clear Blue.  Plaintiffs now bring suit against Clear Blue alleging state law

claims for breach of contract, violation of Conn. Gen. Stat. § 42-110b (the Connecticut Unfair

Trade Practices Act), violation of Conn. Gen. Stat. § 38a-815 (the Connecticut Unfair Insurance

Practices Act), and seeking a declaratory judgment that Clear Blue had an obligation to defend and

indemnify Mr. Happy's in the underlying action.

---

[1] Plaintiff Voronina's name is spelled as both "Voronia" and "Voronina" throughout the complaint and Plaintiffs' oppositions to Defendant's motion for judgment on the pleadings and motion for summary judgment. *See e.g.*, ECF No. 1 at 1; ECF No. 58 at 1–2.  As "Voronina" is the more common spelling throughout Plaintiffs' filings, the Court will use this spelling throughout this ruling.

Clear Blue has moved for judgment on the pleadings on Plaintiffs' declaratory judgment claim, arguing that because Mr. Happy's conduct falls under a coverage exclusion for "exhibitions and related marketing" (the "ERM Exclusion"), Clear Blue had no duty to defend or indemnify Mr. Happy's in the underlying action.  Additionally, Clear Blue has moved for summary judgment on Plaintiffs' remaining claims.  For the reasons below, both of Clear Blue's motions are granted and the action is dismissed.

## I.   FACTUAL BACKGROUND

### A.  The Underlying Litigation

On June 5, 2019, Alyssa Nobriga, Cielo Jean "CJ" Gibson, Dessie Mitcheson, Eva Pepaj, Marketa Lim a/k/ Marketa Kazdova, Tiffany Toth-Gray, Brooke Johnson a/k/a Brooke Taylor, Irina Voronina, Monica Leigh, and Ursula Mayes (the "Underlying Action Plaintiffs") commenced an action against Mr. Happy's and its owner Frederic Toupin in the District of Connecticut, alleging that Mr. Happy's used their images, likenesses, and advertising ideas without their consent to promote itself.  *See Alyssa Nobriga, et al. v. Mr. Happy's Inc. d/b/a Mr. Happy's Café, et al.*, No. 3:19-CV-868 (JAM) (the "Underlying Action"), ECF No. 1.[2]  Mr. Happy's is the holder of insurance policy number AE05-00000208-00 (the "Policy"), issued by Clear Blue, which provided coverage for commercial general liability—including personal and advertising injury—for the policy period spanning from August 9, 2017 to August 9, 2018.  Compl., ECF No. 1 ¶¶ 21–22, 25; Policy, Def.'s Ex. 2, ECF No. 39-2.[3]  Mr. Happy's tendered the claim to Clear Blue, which rejected the claim on the grounds that the Underlying Action fell within several of the Policy's enumerated

---

[2] Defendant's motion for judgment on the pleadings states the case number for the Underlying Action is 3:19-CV-068; the correct case number is 3:19-CV-868 (JAM).

[3] On a Rule 12(c) motion, a court may consider "any written instrument attached [to the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Both the Insurance Policy and the Underlying Action's amended complaint, including its exhibits, are incorporated by reference to the complaint in this action, and thus may properly be considered in resolving Plaintiffs' motion for judgment on the pleadings.

exclusions.  ECF No. 1 ¶¶ 31–35.  Subsequently, the parties reached a settlement agreement wherein Mr. Happy's assigned all rights, remedies, and claims it had against Clear Blue to the Underlying Action Plaintiffs and Jessica Hinton (together, "Plaintiffs").  *See* Underlying Action, ECF No. 76; ECF No. 1 ¶ 6.

### B.  Current Litigation

Plaintiffs, all "well-known professional models," now bring suit directly against Clear Blue "seeking compensation for the costs and expenses incurred in the Underlying Action; a declaration Clear Blue owed Mr. Happy's a defense and indemnity under the operative insurance policies; actual damages for violations of Conn. Gen. Stat. §§ 42-110b and § 38a-815; and all attorneys' fees, costs and disbursements."  ECF No. 1 ¶¶ 7, 14–19.

Plaintiffs' complaint alleges four counts:  breach of contract for Clear Blue's failure to defend and indemnify Mr. Happy's in the Underlying Action (Count One); declaratory judgment seeking a declaration that Clear Blue owed duties to defend and indemnify Mr. Happy's in the Underlying Action (Count Two); a violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b (Count Three); and a violation of Connecticut's Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815 (Count Four).  *Id.* at 6–10.

### C.  The Policy

As relevant here, the Policy provided Mr. Happy's with protection against personal and advertising injury.  ECF No. 39-2 at 47.  Specifically, Clear Blue agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies . . . [and] defend the insured against any 'suit' seeking those damages."  *Id.*  "Personal and advertising injury" is defined under the Policy as:

> injury, including consequential "bodily injury" arising out of one or more of the following offenses:

3

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*Id.* at 56. Clear Blue's duty to indemnify and defend is limited, however, and does not apply to personal and advertising injuries in sections (d)–(g) "if such activities arise out of or are part of 'exhibitions and related marketing,'" which is the ERM Exclusion. *Id.* at 30. The ERM Exclusion is defined to cover:

> (a) The creation, production, publication, performance, exhibition, distribution or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media, books, magazines, social media, webcasts and web sites.
> (b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.
> (c) Merchandising, advertising or publicity programs or material for the operations and material described in (a) or (b) above.

*Id.*

## **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

### I.   LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*,

259 F.3d 123, 126 (2d Cir. 2001).  Under both standards, "the district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.  The court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle [plaintiff] to relief." *Id.* (internal citations omitted).

When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II.    DISCUSSION

The Court holds that the ERM Exclusion is neither illusory nor ambiguous as to its exclusion of injuries arising from advertising for "promotional events," and thus excludes coverage for Mr. Happy's alleged injuries, as pursued by Plaintiffs.

### A.    Illusory Coverage

First, the Court concludes that the ERM Exclusion does not render the personal injury coverage illusory.

An insurance company may exclude coverage for specific risks that "would otherwise be included within the general scope of the policy." *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 588–89 (1990) (citation omitted). And "[u]nless the exclusionary language eliminates coverage altogether, it does not render the coverage illusory." *Karas v. Liberty Ins. Corp.*, 335 Conn. 62, 106 (2019); *see also Gibson v. First Mercury Ins. Co.*, 633 F. Supp. 627, 646 (D. Conn. 2022) (citing *id.*). The question is whether the "grant of coverage . . . is broader than the exclusion" itself. *Connecticut Ins. Guar. Ass'n v. Drown*, 134 Conn. App. 140, 153 (2012), *aff'd*, 314 Conn. 161 (2014). Thus, an insurance policy "will not be deemed illusory unless it would not result in coverage under any reasonably expected set of circumstances." *Karas*, 335 Conn. at 108.

Here, the plain language of the ERM Exclusion applies only to a subset of the types of personal and advertising injuries that are otherwise covered by the Policy, and therefore is not illusory. For example, the ERM Exclusion does not apply to injuries in categories (a) through (c), which include injuries of false arrest, detention and imprisonment, malicious prosecution, and wrongful eviction, wrongful entry, or invasion of the right of private occupancy. Policy, ECF No. 39-2 at 30, 56. Additionally, as Defendant points out, even within the types of personal and advertising injury that the ERM Exclusion could apply to, it does not apply to *all* such types of injuries in those categories. *See* ECF No. 39 at 17–18 (providing several examples of the types of

6

advertising injuries that would still be covered).[4]  Thus, there exists a clearly defined subset of personal and advertising injuries where coverage would apply, rendering it non-illusory.

Despite Plaintiffs' urging, the Court declines to adopt the reasoning in *Princeton Excess & Surplus Lines Ins. Co. v. R.I. Cranston Ent. Inc.*, 725 F. Supp. 3d 184 (D.R.I. 2024), in which the District of Rhode Island concluded the identical ERM Exclusion rendered the advertising injury coverage illusory.  To reach this conclusion, the District of Rhode Island interpreted the personal and advertising injury coverage as providing two separate categories of coverage—first, personal injury, and second, advertising injury.  *Id.* at 194–95.  Because it found that the ERM Exclusion "contradicts [the insurer's] purported coverage for 'advertising,'" it held that the personal injury and advertising coverage of the policy was illusory, despite that coverage for various personal injuries remained intact.  *Id.* at 195–96.  The District of Rhode Island explicitly declined to follow the approach of the Fifth Circuit in *Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Houston, Inc.*, 84 F.4th 274, 286 (5th Cir. 2023), which upheld the same ERM Exclusion as non-illusory given that it did not disturb coverage for personal and advertising injuries in subsections (a)-(c) for false arrest, detention, or imprisonment; malicious prosecution; and wrongful eviction and wrongful entry.  The District of Rhode Island concluded that "[t]he claims-based approach followed by the Fifth Circuit . . . has no analog in Rhode Island law."  *Princeton Excess & Surplus Lines Ins. Co.*, 725 F. Supp. 3d at 195.

---

[4] Plaintiffs contend that Defendant's examples are "of no help" against Plaintiffs' argument that the ERM Exclusion eviscerates coverage for advertising because "most of these suggestions *are not advertisements*."  ECF No. 40 at 17 (emphasis in original).  "Advertisement" is defined under the policy as "a notice that is broadcast or published to the general public or specific market segments about [Mr. Happy's] goods, products or services for the purpose of attracting customers or supporters."  ECF No. 39-2 at 54.  Thus, at the very least, Defendant's examples of "[a] club's roadside billboard [that] mimics the color scheme and slogan of a competitor's marketing campaign," "[a] chalkboard sign outside the club [that] uses a protected slogan from another bar," "a direct-mail flyer [that] includes a licensed cartoon or image without proper permissions," and "[a]n ad placed in the phonebook [that] copies the layout and text of a competitor's copyrighted format," unquestionably are "advertisements" under the Policy, even if other examples are closer calls.  ECF No. 39 at 18.  The Court therefore rejects Plaintiffs' argument.

But Connecticut law does provide an analogue in that it instructs that an insurance policy "must be viewed in its entirety, with each provision read in light of the other provisions; and every provision must be given effect if it is possible to do so." *Petrucelli v. Palmer*, 596 F. Supp. 2d 347, 358–59 (D. Conn. 2009) (quoting *United Illuminating Co. v. Wisvest-Connecticut, LLC*, 259 Conn. 665, 670–71 (2002)). The District of Rhode Island's approach artificially separates personal injury coverage from advertising injury coverage, rather than giving effect to the fact that those coverages are grouped together in the Policy, and thus should be read together. Further, the District of Rhode Island's opinion rested on a Rhode Island Supreme Court case standing for the proposition that "courts will not uphold an exclusion that leads to unreasonable results, particularly if doing so will make another part of the coverage illusory." *Princeton Excess & Surplus Lines Ins. Co.*, 725 F. Supp. 3d at 194 (citing *Campbell v. Norfolk & Dedham Mut. Fire Ins. Co.*, 682 A.2d 933, 936 (R.I. 1996)). The Connecticut Supreme Court has *expressly* rejected *Campbell's* reasoning, finding that the decision "runs counter to that court's repeated holding, consistent with our own precedent and the case law of virtually every other state, that a policy provision offering coverage for a particular peril will not be deemed illusory unless it would not result in coverage under any reasonably expected set of circumstances." *Karas*, 355 Conn. at 107–08. Thus, to analyze whether a contract is illusory by segmenting specific provisions, rather than considering the provision as a whole, would contravene clear Connecticut law; in light of this, the Court finds the reasoning of the Fifth Circuit to be more aligned with Connecticut law.

Accordingly, the Court finds that the ERM Exclusion does not operate to make the personal and advertising injury provision of the Policy illusory.

B. Ambiguity

The Court also concludes that the ERM Exclusion precludes the coverage Plaintiffs seek.

8

Under Connecticut law, the interpretation of an insurance policy is a question of law for the Court, to be interpreted by the same general rules of construction as any written contract. *Williams v. MESA Underwriters Specialty Ins. Co.*, 538 F. Supp. 3d 234, 241 (D. Conn. 2021); *see also Gibson*, 633 F. Supp. at 640. "At the motion [for judgment on the pleadings] stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). "A contract is unambiguous if 'the contract language has a definite and precise meaning and concerning which there is no reasonable basis for a difference of opinion.'" *Stanley Works Israel Ltd. v. 500 Grp, Inc.*, 332 F. Supp. 3d. 488, 501 (D. Conn. 2018) (quoting *Orchard Hill Master Fund Ltd*, 830 F.3d at 157). On the other hand, a contract is ambiguous if its language is "susceptible to more than one reasonable interpretation." *United Illuminating Co.*, 259 Conn. at 671. In determining if a contract is ambiguous, "the words of the contract must be given their natural and ordinary meaning." *Id.* at 670. Additionally, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id*. Rather, "any ambiguity in a contract must emanate from the language used by the parties." *Id.* at 671 (cleaned up). If the language of an insurance policy indeed is ambiguous, "such language must be construed against the insurance company that drafted the policy." *Makufka v. CSAA Fire & Cas. Ins. Co.*, 304 F. Supp. 3d 275, 279 (D. Conn. 2018); *see also Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801, 812 (1999) ("if an exclusion clause is ambiguous, it must be construed against the drafter").

Here, the parties do not dispute that the conduct alleged in the Underlying Action could be considered a personal and advertising injury based on Mr. Happy's "oral or written publication, in any manner, of material that violates a person's right of privacy." *See* ECF No. 39 at 6 (citing

9

Policy language); 11 ("Clear Blue does not dispute" that subpart (e) of the Policy's definition of "personal and advertising injury" is implicated).  But Clear Blue argues that the ERM Exclusion unambiguously applies to preclude coverage of Mr. Happy's personal advertising injury because such injury was the result of either (a) Plaintiffs' celebrity image or likeness or (b) promotional events, as well as any merchandising, advertising, or publicity programs in connection with either. ECF No. 39 at 11–15.  The Court concludes that it is inappropriate to decide if coverage is excluded based on Plaintiffs' "celebrity" status on a motion for judgment on the pleadings, but that coverage was excluded because the images at issue undoubtedly qualify as advertising for "promotional events."

### 1.  "Celebrity" Status

First, the Court cannot conclude, at the present juncture, that the ERM Exclusion applies because Plaintiffs are all celebrities whose image or likeness was appropriated in advertising materials by Mr. Happy's.  ECF No. 39 at 11–14.  Mr. Happy's personal and advertising injury is not covered under the Policy if it was the result of the "creation, production, publication, performance, exhibition, distribution or exploitation of . . . celebrity image or likeness."  ECF No. 39-2 at 30.  Defendant argues that Plaintiffs are all celebrities, and thus Mr. Happy's use of their images or likenesses in advertisement falls under the ERM Exclusion.

"Celebrity" is not defined under the Policy.  Thus, the Court first turns to dictionary definitions to define the word.  *Williams*, 538 F. Supp. at 241; *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 42 n.8 (2014) ("To ascertain the commonly approved usage of a word in an insurance policy, it is appropriate to look to the dictionary definition of the term.") (cleaned up; citation omitted).  In ordinary use, "celebrity" means "a famous or celebrated person." *Celebrity*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/celebrity (last visited July 10, 2026).  Plaintiffs allege—and on a motion for judgment on the pleadings the

Court accepts as true—that they are all "well-known professional model(s)."  ECF No. 1 ¶¶ 14–19.  But it is not clear that "well-known" is functionally equivalent to being a "celebrity" or "famous."  For example, a lawyer may be particularly well-known within their field, but that does not then guarantee that they are celebrated or famous *generally*.  Continuing the example, while members of the Supreme Court Bar may be well-known appellate lawyers, one would not say they are famous in the same way that, say, the Chief Justice is.  The same is true for Plaintiffs; while they may be well-known models and some have had significant media exposure[5], that does not necessarily mean they are in turn celebrities or famous generally.  This is not to say that Plaintiffs are *not* celebrities, but that is exactly the issue:  the Policy provides no clarity on the meaning of "celebrity," such as whether "celebrity" requires someone to be an "A-list" celebrity or, as suggested at oral argument, whether recognition by Mr. Happy's general clientele would be sufficient.  Such confusion stems directly from the imprecise language of the Policy, and on a motion for judgment on the pleadings, the Court must resolve this ambiguity against the drafter of the Policy, Defendant.  *See Makufka*, 304 F. Supp. 3d at 279; *Springdale Donuts*, 247 Conn. at 812.  Thus, the Court finds that the term "celebrity" in the ERM Exclusion is ambiguous, and it cannot find, on a motion for judgment on the pleadings, that coverage for Plaintiffs' alleged injuries is precluded on that basis.

---

[5] For example, Defendant points out that Ms. Gibson has worked for various magazines and has a "massive" following; Ms. Pepaj has worked on a "highly acclaimed HBO television series and national ad campaigns"; Ms. Nobriga is affiliated with Deepak Chopra; Ms. Voronina has more than 4.5 million social media followers and has been featured in network television series; Ms. Leigh has had a print, online, and television career with *Playboy*; and Ms. Mayes was a model for *Deal or No Deal* and has appeared in other television programs.  ECF No. 39 at 13.

##### 2. "Promotional Events"

The phrase "promotional events" in the ERM Exclusion, is not ambiguous, however, and Plaintiffs' alleged injuries plainly arise from "advertising" for such events. Thus, the ERM Exclusion bars coverage.

Mr. Happy's is not covered under the Policy if its personal and advertising injury was the result of the "creation, production, publication, performance, exhibition, distribution or exploitation of . . . promotional events. . . in any medium including . . . social media . . . and web sites," or of "advertising" for such events. ECF No. 39-2 at 30. Because the term "promotional events" is not defined under the Policy, the Court again "turns to dictionary definitions to define" the phrase. *Williams*, 538 F. Supp. at 241; *Lexington Ins. Co.*, 311 Conn. at 42 n.8. "Promotional" means "of, relating to, or serving the end of promotion." *Promotional*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/promotional (last visited July 10, 2026). And "promotion" in this context means "the act of furthering the growth or development of something *especially*: the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." *Promotion*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/promotion (last visited July 10, 2026). "Event," as relevant here, is "a noteworthy happening," or a "social occasion or activity." *Event*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/event (last visited July 10, 2026). Taking the natural and ordinary meanings of these words together, a promotional event is a noteworthy happening or social occasion or activity serving the means of furthering the growth or development of something, particularly the acceptance and sale of merchandise through advertising, publicity, or discounting.

In the Underlying Action, Plaintiffs themselves allege that their images were used to "*promote* Mr. Happy's Café" either on its website or through social media. *See* Underlying Action,

ECF No. 1 ¶¶ 29, 32, 35, 44, 47, 50, 53, 56 (emphasis added). They further allege that Mr. Happy's used its social media accounts "in furtherance of . . . their *promotion* of Mr. Happy's Café," to "*promote* Mr. Happy's Café, and to attract patrons thereto." *Id.* ¶¶ 59, 60 (emphasis added). Thus, based on Plaintiffs' own pleadings, the advertisements at issue were "promotional" in nature.

And it is also clear they are advertisements for "promotional events" made on social media and Mr. Happy's website. ECF No. 39 at 14–15. For example, Plaintiff Alyssa Nobriga was featured in a Facebook advertisement for Mr. Happy's "Cinco de Mayo Party," which advertised "15 beautiful señoritas," along with special prices for particular types of alcohol and a "free taco bar." Nobriga Advertisement, Underlying Compl., Ex. A, ECF No. 39-1 at 31. Plaintiff Eva Pepaj was similarly featured on a Facebook advertisement for Mr. Happy's Halloween and St. Patrick's Day parties. *Id.*, Ex. D, at 37–39. The advertisements again highlighted "15 female entertainers" or "15 lovely lasses" in the case of St. Patrick's Day, along with special prices for beer and liquor, a "free buffet & much more," and corned beef sandwiches for St. Patrick's Day. *Id.* Plaintiffs Jessica Hinton and Irina Voronina were both featured in different advertisements for Mr. Happy's Halloween party, advertising the same general options as the previous Halloween advertisement featuring Pepaj. *Id.*, Ex. E, at 41; Ex. I, at 61–69. Plaintiff Monica Leigh was featured on another of Mr. Happy's Cinco de Mayo ads, which advertised the same offerings as Plaintiff Nobriga's ads. *Id.*, Ex. J, at 70–88. Finally, Plaintiff Ursula Mayes was featured on Mr. Happy's advertisements for "Baseball Night," which featured special prices on alcohol, fifty cent wings, and a "2 for 1" promotion on private dances. *Id.*, Ex. K, at 90–91.

As Defendant points out, these advertisements were not "ordinary strip club evenings," but rather were "tied to a holiday or to a recurring weekly promotion," making them promotional events. ECF No. 39 at 14. The Court agrees; each advertisement offered discounts on food and

13

entertainment with the goal of bringing additional customers through Mr. Happy's doors, and tied such discounts to specific holidays or themed nights such as baseball night.  Thus, they are "advertising" for "promotional events."  This same conclusion, based on the identical ERM Exclusion language, was recently endorsed by the Middle District of Florida.  *See* Not. of Supp. Auth., ECF No. 60; *Sampedro v. Clear Blue Specialty Ins. Co.*, No. 8:25-CV-12 (JLB) (TGW), 2026 WL 1291919, at *3 (M.D. Fl. May 12, 2026) ("Plaintiffs' likenesses were used by Silver Fox through its advertising of an exhibition of promotional events. . . . Specifically, the nightclub posted images of Plaintiffs on social media to draw attention to its promotional events, including the 'Pretty Chicks & Kicks' and 'Tastee Tuesday' events.").

The Court rejects Plaintiffs' contention that a "promotional event" must promote something other than Mr. Happy's itself, such as "a movie premiere, a book launch, [or] a charity auction."  ECF No. 40 at 16.  The natural reading of "promotional event" does not necessarily require promotion of something other than the business itself.  Rather, it is clear Plaintiffs' images were used in advertising for noteworthy happenings and social activities that furthered the growth or development of something—specifically, Mr. Happy's.  That the advertisements offered free food and special pricing on alcohol to attract customers supports the conclusion that these were "promotional events" for Mr. Happy's.  That is sufficient to exclude coverage under the ERM Exclusion.  *See Sampedro*, 2026 WL 1291919, at *3 ("Silver Fox's promotional events promoted the nightclub itself through alcohol sales and DJ appearances.").  And to the extent that Plaintiffs argue this reading would exclude coverage for advertising for *any* type of event, whether promotional or not, that is not the case.  If, for instance, the advertisements announced a social gathering such as a person's birthday, but did not mention special pricing or other enticements, the advertisement may properly be construed as one for an event, but not a *promotional* event.

14

Accordingly, the Court finds that the Policy's ERM Exclusion for "promotional events" unambiguously applies to the advertisements at issue here, releasing Defendant from any duty to defend or indemnify Mr. Happy's under the Policy. Defendant's motion for judgment on the pleadings as to Count Two is therefore GRANTED.

\* \* \*

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Next, the Court concludes that Defendant's motion for summary judgment on the remaining counts of Plaintiffs' complaint must be granted.

## I.    FACTUAL BACKGROUND

The following facts, drawn from Defendant's Local Rule 56(a)1 statement and Plaintiffs' Local Rule 56(a)2 statement, are undisputed except as otherwise noted.

### A.    The Underlying Action

As noted above, on June 5, 2019, the Underlying Action Plaintiffs commenced an action against Mr. Happy's. Pls.' L.R. 56(a)2 St., ECF No. 58 ¶¶ 1–2; Underlying Am. Compl., Leff Decl., Ex. B, ECF No. 54-5. The Underlying Plaintiffs alleged Mr. Happy's used their images in "promotional and advertising materials" without consent, and this use created the false impression that Plaintiffs were affiliated with or otherwise endorsed Mr. Happy's. ECF No. 58 ¶ 3; ECF No. 54-5 ¶¶ 1–2.

On or about July 9, 2021, Plaintiffs entered into a settlement agreement and release (the "Settlement Agreement") with Mr. Happy's, its owner Frederic Toupin, and Indian Harbor Insurance Company ("Indian Harbor"), another of Mr. Happy's insurers. ECF No. 58 ¶ 4; Settlement Agreement, Leff Decl., Ex. C, ECF No. 54-6. Indian Harbor had issued liability insurance policies to Mr. Happy's, but disputed the existence, scope and/or amount of coverage available as to the Underlying Action. ECF No. 58 ¶ 5. Under the terms of the Settlement

Agreement, Indian Harbor "agreed to pay Plaintiffs an undisclosed sum" in exchange for the release of all of Plaintiffs' claims against Mr. Happy's arising out of the Underlying Action, as well as the release of all of Plaintiffs and Mr. Happy's claims against Indian Harbor, though Plaintiffs dispute that they received any payment. *Id.* ¶¶ 6–7. Mr. Happy's, in turn, assigned to Plaintiffs' "any and all rights, remedies, or Claims, whether contractual or at law, that they may currently have, or may subsequently have" under the insurance policies issued to Mr. Happy's by Defendant Clear Blue and another insurance company, First Mercury, with respect to claims in the Underlying Action. *Id.* ¶ 10; ECF No. 54-6 ¶ 5.1. Mr. Happy's did not pay any portion of the settlement amount. ECF No. 58 ¶ 8.

As part of the Settlement Agreement, Plaintiffs agreed to dismiss the Underlying Action with prejudice, and the case was reported settled on the docket on April 2, 2021. ECF No. 58 ¶¶ 12–13; Underlying Action, ECF No. 75. On April 2, 2021, Judge Meyer entered an order administratively closing the case, without prejudice to reopening on or before May 14, 2021. ECF No. 58 ¶ 14; Underlying Action, ECF No. 76. There has been no subsequent activity on the docket and no judgment or adjudication of liability, no judgment, consent judgment, stipulated judgment, or other judicial determination fixing liability or damages was ever entered against Mr. Happy's in the Underlying Action. ECF No. 58 ¶ 15.

B. Relevant Developments in the Present Action

While Plaintiffs initially maintained that they had received a judgment in the Underlying Action in their Rule 26(a) disclosures in the present action, there is no longer any dispute between the parties that no judgment was entered in the Underlying Action. *Id.* ¶¶ 28–30.

On June 30, 2025, Plaintiffs produced their initial damages analysis, which claimed that $335,000 was the fair market valuation of Mr. Happy's use of Plaintiffs' images, and further sought attorneys' fees incurred by Mr. Happy's in defense of the Underlying Action without providing a

16

dollar amount for those fees and without further documentary support for any of the amounts requested. *Id.* ¶¶ 31–33; Initial Damages Analysis, Leff Decl., Ex. F, ECF No. 54-9.

The Scheduling Order provided that an updated damages analysis was due December 15, 2025, fourteen days after the close of discovery. Scheduling Order, ECF No. 28 at 1–2. On January 26, 2026, more than a month after this due date, Plaintiffs produced an updated damages analysis, asserting that Mr. Happy's incurred a total of $47,877.18 in alleged defense costs for the Underlying Action, as well as approximately $45,000 in attorneys' fees in connection with the current action. ECF No. 58 ¶¶ 34–35; Updated Damages Analysis, Leff Decl., Ex. G, ECF No. 54-10. The updated damages analysis did not include any of the underlying invoices or time entries supporting the totals alleged; nor did Plaintiffs identify any witness with personal knowledge to substantiate the alleged defense costs for the Underlying Action. ECF No. 58 ¶ 36. The only documents produced by Plaintiffs reflecting alleged defense costs were a partial payment ledger and a one-page partial billing summary for one of the two law firms involved in defense of the Underlying Action. *Id.* ¶ 38; ECF No. 54-10 at 6–9.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

17

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial." *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001). "It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

## III.   DISCUSSION

### A.   Count One (Breach of Contract)

First, the Court concludes that Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

As noted above, Mr. Happy's assigned its rights against Clear Blue to Plaintiffs. ECF No. 1 ¶ 6. In Count One of their complaint, Plaintiffs bring a breach of contract claim for Clear Blue's alleged failure to defend and indemnify Mr. Happy's under the Policy, seeking "damages in an amount to be proven at trial." ECF No. 1 ¶¶ 43–49; *id.* at 10. But because the Court has granted Defendant's motion for judgment on the pleadings above and held that Defendant had no duty or obligation under the Policy to defend or indemnify Mr. Happy's for the conduct alleged in the Underlying Action, Count One must necessarily also be dismissed, as there can be no breach of contract claim wherein Defendant had no duty to defend or indemnify. *See DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 681, 687 (2004) (holding that a decision in a declaratory judgment action finding an insurer had no duty to defend necessarily determines that the insurer likewise has no duty to indemnify and bars a direct action claim brought under Conn. Gen. Stat. § 38a-321). Nevertheless, even if the Court were to consider Plaintiffs' breach of contract claim on its merits, it would still fail.

#### 1.   Direct Action Statute

Plaintiffs' complaint does not specify whether they are pursuing their breach of contract claim under the common law or under Connecticut's direct action statute, Conn. Gen. Stat. § 38a-321. To the extent Plaintiffs are proceeding under Connecticut's direct action statute, they cannot do so because they have not obtained a judgment that remains unsatisfied. The direct action statute, Conn. Gen. Stat. § 38a-321, provides in relevant part that "[u]pon the *recovery of a final judgment* [in an action] against any person, firm or corporation by any person . . . if the defendant in such

19

action was insured against such loss or damage at the time when the right of action arose . . . such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer." (Emphasis added.)  Under the direct action statute, the injured party who steps into the shoes of the insured, "obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the assured under the policy." *Brown v. Emp.'s Reinsurance Corp.*, 206 Conn. 668, 673 (1988).

The Connecticut Supreme Court has set forth elements for a cause of action under the direct action statute as follows:  (1) that the plaintiff has recovered a final judgment; (2) that the judgment is against a person who was insured by the defendant against liability on it; and (3) that the judgment remains unsatisfied.  *Skut v. Hartford Accident & Indem. Co.*, 142 Conn. 388, 393 (1955).  More recently, the Connecticut Appellate Court clarified that a plaintiff "is subrogated to the rights of the insured, and is entitled to bring an action against an insurance company [under § 38a-321] only *after* judgment." *Carford v. Empire Fire and Marine Ins. Co.*, 94 Conn. App. 41, 46 (2006).  Accordingly, courts in this District have consistently held that the recovery of a final judgment is a necessary prerequisite to bring a cause of action pursuant to Conn. Gen. Stat. § 38a-321. *Tucker v. Am. Int'l. Grp., Inc.*, 745 F. Supp. 2d 53, 59 (D. Conn. 2010); *Pellechia v. Estate of Dimartino*, No. 3:11-CV-183 (WWE), 2012 WL 3940140, at *3 (D. Conn. Sept. 9, 2012); *Allstate Ins. Co. v. Martinez*, No. 3:11-CV-574 (VLB), 2012 WL 1379666, at *5 (D. Conn. Apr. 20, 2012).  Because it is undisputed here that there was no final judgment reached in the Underlying Action, Plaintiffs cannot seek compensatory damages under Connecticut's direct action statute. *See* ECF No. 58 ¶¶ 15–16, 30 ("undisputed" that no judgment, consent judgment, stipulated judgment, or other judicial determination fixing liability or damages was ever entered against Mr. Happy's in the Underlying Litigation).

20

2. *Contractual Assignment*

To the extent Plaintiffs are proceeding with their breach of contract claim simply as contractual assignees of any claims Mr. Happy's may have against Clear Blue, Clear Blue is likewise entitled to summary judgment because Plaintiffs have failed to demonstrate a genuine issue of material fact as to damages, a necessary element, with admissible evidence.

Under Connecticut state law, a breach of contract claim has four necessary elements:  the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages.  *See Walker v. People's United Bank*, 305 F. Supp. 3d 365, 374 (D. Conn. 2018) (quoting *Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C.*, 311 Conn. 282, 291 (2014)).  Damages in a breach of insurance contract claim include the "reasonable expenses" incurred by an insured party in conducting his own defense—including settlement, if there is no showing of fraud or collusion—when the insurer breached its duty to defend under the insurance policy.  *R.T. Vanderbilt Co., Inc. v. Continental Cas. Co.*, 273 Conn. 448, 470–71 (Conn. 2005); *Capstone Bldg. Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 818 n.64 (2013).

The burden of proving damages is on the party claiming them.  *Capstone*, 308 Conn. at n.64; *see also 24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.*, 239 Conn. 284, 308 (1996).  "[A] plaintiff must prove damages with reasonable certainty, which means that a trier of fact must have a sufficient basis for estimating their amount in money." *Van Natta v. Great Lakes Reinsurance (UK) SE*, 462 F. Supp. 3d 113, 136 (D. Conn. 2020) (internal citation omitted), *reconsideration denied*, No. 3:18-CV-438 (SRU), 2020 WL 5215461 (D. Conn. Sept. 1, 2020).  While "mathematical precision" is not required, the trier of fact must be able to reasonably and fairly estimate the damages amount.  *ALV Events Intern. v. Johnson*, 821 F. Supp. 2d 489, 494 (D. Conn. 2010) (citing *24 Leggett Street Ltd. P'ship*, 239 Conn. at 308–09).

21

Here, Plaintiffs have conceded both in their pleadings and again at oral argument that they are not "seeking any 'fair market valuation' damages from Clear Blue"—in other words, compensatory damages, in this action. ECF No. 57 at 5 n.1. And Plaintiffs acknowledge they can recover only what damages they could recover "standing in the shoes" of Mr. Happy's. ECF No. 57 at 6. Thus, the question is whether Plaintiffs have produced admissible evidence from which a jury could reasonably and fairly estimate Mr. Happy's damages, which are the attorney's fees and costs that Mr. Happy's incurred and allegedly paid in defending and settling the Underlying Action.

The Court concludes that no reasonable jury could find that Plaintiffs have demonstrated a reasonable estimate of their damages here with admissible evidence. First, it is undisputed that Plaintiffs' initial damages analysis was provided to Defendant on June 30, 2025, and merely stated that Plaintiffs intended to seek "[a]ll attorneys' fees incurred by Mr. Happy's, Inc. in the Underlying Action." ECF No. 54-9 at 2; ECF No. 58 ¶ 33. This damages analysis requested no specific amount of attorneys' fees from the Underlying Action and provided no underlying billing records, affidavits, or names of individuals who could attest to any fees or amounts. The only specific amounts included in this damages analysis were a request of $335,000 in compensatory damages, which Plaintiffs have now withdrawn.

Plaintiffs' later disclosures did not adequately remedy this defect. Discovery proceeded to close on December 1, 2025. *See* ECF No. 28. Following the close of discovery, and more than a month after an updated damages analysis was due under the Scheduling Order, Plaintiffs provided an amended damages analysis on January 26, 2026, which for the first time provided the specific amount of attorneys' fees sought as damages in connection with defense of the Underlying Action, totaling $47,877.18. ECF No. 58 ¶¶ 34, 35; ECF No. 54-10 at 2–11. This updated analysis merely

22

stated that Mr. Happy's paid $21,894.77 "to the law firm of Kainen, Esclaera, and McHale (awaiting document back up)" and $25,982.41 to the law firm of "Zeldes, Needle & Cooper, P.C. (payment ledger attached)." ECF No. 54-10 at 3. In connection with the belated damages analysis, Plaintiffs produced a ledger indicating payment of bills (presumably from Zeldes, Needle & Cooper, but without any actual indication on the document itself about which law firm's ledger it is) and one page of one billing record, which states that the billable hours for each of five separate tasks amounted to 0.00 and were billed for $0.00, and only includes one charge for "Lexis legal research" in the amount of $137.08, which also bears an amount of $0.00 in the "amount" column. ECF No. 54-10 at 6–9.[6]

To start, Plaintiffs' initial damages estimate produced during discovery did not provide *any* estimate of the defense costs in the Underlying Action. And even assuming that the documentary support in Plaintiffs' January 26, 2026, amended damages analysis were sufficient to create a material issue of fact as to the amount of attorneys' fees Plaintiffs seek as a result of the Underlying Action, it was not timely produced under the Court's scheduling order, and thus cannot be relied on to oppose Defendant's summary judgment motion or at trial. A party in an action has a duty to initially disclose "a computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered," by the date the Court has set. Fed. R. Civ. P. 26(a)(1)(A)(iii). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness

_____

[6] Plaintiffs also included an estimate of compensatory damages based on each Plaintiff's daily rate, which is now irrelevant in light of the fact that Plaintiffs are not pursuing compensatory or fair market valuation damages. ECF No. 54-10 at 11.

23

to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Substantially justified means justification to a degree that could satisfy a reasonable person that the parties could differ as to whether the party was required to comply with the disclosure request." *White v. City of Middletown*, 45 F. Supp. 3d 195, 208 (D. Conn. 2014) (internal citation omitted). And "[f]ailure to comply with the mandate of [Rule 37(c)(1)] is harmless when there is no prejudice to the party entitled to the disclosure." *Id.* The party that fails to comply with Rule 26(a) or (e) bears the burden of proving either that its non-compliance was substantially justified or that it was harmless. *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012). The Court "has the ultimate discretion" in determining whether to exclude evidence at trial pursuant to Rule 37(c)(1). *Bryant v. City of Hartford*, 585 F. Supp. 3d 179, 187 (D. Conn. 2022) (internal quotation omitted).

Under the Court's Scheduling Order, Plaintiffs' initial damages analysis was due June 27, 2025. *See* ECF No. 28 at 1. As noted above, a few days after this deadline, Plaintiffs disclosed a damages analysis that sought defense costs related to the Underlying Action, but provided no estimate of the amount of those costs, nor any evidentiary support for the fee amount—despite that the defense concluded approximately four years earlier, in April of 2021 at the latest. *See* ECF No. 54-9 at 2. An updated damages analysis was due by December 15, 2025. *See* ECF No. 28 at 1 (requiring production of an updated damages analysis fourteen days after the close of discovery, which was December 1, 2025). Plaintiffs did not comply with this deadline. But in late January of 2026, they disclosed the defense costs total of $47,877.18 in the Underlying Action, noting that they were "awaiting document back up" from Kainen, Esclaera, and McHale," and providing only a payment ledger and a partial billing record showing a total of $0.00 in bills, presumably for

24

Zeldes, Needle & Cooper, P.C.  ECF No. 54-10 at 2.  These documents were not accompanied by an affidavit or declaration of someone with personal knowledge explaining them or otherwise substantiating the figures within them.  Thus, Plaintiffs' disclosure of these documents in January of 2026, after the scheduling order's deadline, was certainly untimely, and also failed to comply substantively with Rule 26's requirement to provide the evidentiary support for their damages calculation.

Accordingly, Plaintiffs may not use even the meager information in their amended damages report to create a genuine dispute of material fact unless they can demonstrate their failure to timely disclose was substantially justified or harmless.  Plaintiffs have made *no* showing at all on either of these issues.  Plaintiffs did not contest the belatedness of their disclosures and provided no justification for why any support for their damages analysis was not timely disclosed.  Accordingly, pursuant to Rule 37(c)(1), Plaintiffs cannot rely on any information in their amended damages analysis to create a genuine dispute of material fact on summary judgment.

Finally, in connection with Defendant's motion for summary judgment, Plaintiffs have now submitted two declarations attesting to the attorneys' fees sought from the Underlying Action, one from Edward R. Scofield, and one from Miguel A. Escalera Jr., both attorneys whose firms represented Mr. Happy's in the Underlying Action.  *See* Scofield Decl., Pls.' Opp'n to Mot. for Summ. J., Ex. 3, ECF No. 57-3 at 2; Escalera Decl., Pls.' Opp'n to Mot. for Summ. J., Ex. 4, ECF No. 57-4 at 2.  But Plaintiffs cannot overcome their discovery deficiencies by creating declarations for the purpose of summary judgment from Attorneys Escalera and Scofield to authenticate and substantiate the information they failed to produce during discovery.  *See Cleaveland v. Home Depot USA Inc.*, 788 F. Supp. 3d 325, 340 (D. Conn. 2025) (rejecting argument that affidavit produced for opposing summary judgment that was based on information not disclosed during

discovery could create a genuine dispute of material fact), *aff'd*, No. 25-1582-cv, 2026 WL 904984, at *1–2 (2d Cir. Apr. 2, 2026) (summary order).

Thus, because Defendant owed Mr. Happy's no duty to defend or indemnify it under the terms of the Policy, and because Plaintiffs cannot demonstrate a genuine dispute of material fact as to damages through admissible evidence, Defendant's motion for summary judgment is granted as to Count One.  In light of this holding, the Court need not reach Defendant's alternative arguments for dismissal of this count.  *See* ECF No. 54-1 at 8–9.

B.  Count Three (CUTPA) & Count Four (CUIPA)

Plaintiffs have also brought claims under CUIPA and CUTPA arising out of the Underlying Action.  At oral argument, Plaintiffs conceded that Counts Three and Four should be dismissed. Plaintiffs' concession was appropriate:  Counts Three and Four fail on the merits because CUIPA does not provide a private cause of action, and Plaintiffs lack standing to bring a CUTPA claim. Accordingly, Defendant's motion for summary judgment is granted on Count Three and Count Four as well.

CUTPA prohibits the use of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  The statute creates a private cause of action for "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . .[.]"  Conn. Gen. Stat. § 42–110g(a).

CUIPA, on the other hand, "defines 'unfair methods of competition' as applied to the insurance trade."  *Tucker v. American Int'l Grp., Inc.*, 179 F. Supp. 3d 224, 229 (D. Conn. 2016) (quoting Conn. Gen. Stat. § 38a-815).  Accordingly, "Connecticut courts generally do not recognize a private cause of action under CUIPA"; however, "violations of CUIPA may be alleged as a basis for a CUTPA claim."  *Royal Indem. Co. v. King*, 532 F. Supp. 2d 404, 410 (D. Conn.

2008) (quoting *Bepko v. St. Paul Fire & Marine Ins. Co.*, No. 3:04 CV 01996 (PCD), 2005 WL 3619253, at *3 (D. Conn. Nov. 10, 2005)), *aff'd sub nom., Arrowood Indem. Co. v. King*, 699 F.3d 735 (2d Cir. 2012). Although CUIPA itself does not provide for a private right of action, a plaintiff may "assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Thomas v. Vigilant Ins. Co.*, 594 F. Supp. 3d 499, 511 (D. Conn. 2022) (quoting *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014)).

Here, Plaintiffs clearly cannot bring a standalone claim for a CUIPA violation, and Count Four thus must be dismissed. *See Royal Indem. Co.*, 532 F. Supp. 2d at 410. Nor can they bring a CUIPA claim through a CUTPA claim. The Connecticut Appellate Court has clearly established that "the right to assert a private cause of action for CUIPA violations through CUTPA does not extend to third parties absent subrogation or a judicial determination of the insured's liability." *Carford*, 94 Conn. App. at 53. As discussed above, it is undisputed that no statutory subrogation right applies, and there has been no judicial determination of Clear Blue's liability. Accordingly, Plaintiffs cannot bring a CUIPA claim through CUTPA's enforcement mechanism, and Defendant's motion for summary judgment is granted as to Count Three. In light of this holding, the Court need not reach Defendant's alternative arguments concerning Counts Three and Four. *See* ECF No. 54-1 at 9–10.

C. Attorneys' Fees in the Current Action

Finally, in their complaint, Plaintiffs seek to recover attorneys' fees incurred in this action in connection with Counts Three and Four, their CUTPA and CUIPA claims. ECF No. 1 at 10; ECF No. 57 at 7–8 (tying request for attorneys' fees in this action to Counts Three and Four). Because Plaintiffs have conceded that Counts Three and Four are subject to dismissal, they have necessarily conceded any request for attorneys' fees in connection with those counts.

27

At oral argument, Plaintiffs raised the argument for the first time that an award of attorneys' fees in this action could flow from their breach of contract claim, suggesting that if an insured or its assignee has to sue to enforce contractual rights, its attorneys' fees in the ensuing suit should be recoverable as consequential damages of the insurer's breach of contract. As Plaintiffs did not raise this argument in their pleadings, it is waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (recognizing that issues not sufficiently argued in the briefs are considered waived). Further, Plaintiffs have not directed the Court to any Connecticut or federal authority supporting such a proposition. Indeed, Connecticut follows the American Rule, under which "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *ACMAT Corp. v. Greater N.Y. Mut. Ins. Co.*, 282 Conn. 576, 580–81 (2007). Of course, Plaintiffs are not the successful party on any of their claims. And they have pointed to no contractual provision in the Policy that would allow for recovery of their attorneys' fees in the present action. While CUTPA does allow for recovery of attorneys' fees, Plaintiffs' CUTPA claim and CUIPA through CUPTA claim have been dismissed. Thus, Plaintiffs' request for attorneys' fees in this action must be denied.

\* \* \*

**CONCLUSION**

For the reasons described herein, Defendant's motion for judgment on the pleadings, ECF No. 38, and Defendant's motion for summary judgment, ECF No. 54, are GRANTED. The Clerk is directed to enter judgment for Defendant and close this action.

**SO ORDERED** at Hartford, Connecticut, this 10th day of July, 2026.

            /s/ Sarala V. Nagala
            SARALA V. NAGALA
            UNITED STATES DISTRICT JUDGE

28